**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**NORTHERN DIVISION**

------------------------------------------------------------
                                                          :
In re Subpoena directed to Donna Kenney in
the matter of:                                            :

DANA DUGGAN, Individually, *and on behalf*  :
*of persons similarly situated,*
                                                          :
                 Plaintiff,
                                                          :
               v.                                                Case No. 22-mc-00014
                                                          :
MATT MARTORELLO and EVENTIDE
CREDIT ACQUISITION, LLC,                                  :

                 Defendants.                              :

Case No. Civ. A. No. 18-cv-12277-JGD              :
(District of Massachusetts)
------------------------------------------------------------


**DEFENDANTS' BRIEF IN OPPOSITION TO**
**MOTION TO QUASH SUBPOENA ISSUED TO DONNA KENNEY**


**\*\*\* ORAL ARGUMENT REQUESTED\*\*\***

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................................1

II.    RELEVANT BACKGROUND ...............................................................................2

        A.    The Underlying Case ...................................................................................2

        B.    Plaintiff's Allegations .................................................................................3

        C.    Procedural Posture ......................................................................................4

        D.    Relevance of Testimony Sought from Kenney...........................................6

III.    STANDARD OF REVIEW .....................................................................................7

IV.    ARGUMENT..........................................................................................................8

        A.    The Tribal Entities' sovereign immunity is not a basis to quash the
              Subpoena.....................................................................................................8

              1.    The Tribe Entities waived their sovereign immunity with
                     respect to the testimony sought......................................................8

              2.    Kenney lacks standing to invoke the Tribe's sovereign
                     immunity. ......................................................................................10

              3.    The Subpoena is directed to Kenney in her individual capacity
                     and not in an official capacity for the Tribe................................11

        B.    Kenney Has Not Carried Her Burden of Showing the Subpoenas Are
              Unduly Burdensome ...................................................................................13

V.    CONCLUSION.....................................................................................................14

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aquamar, S.A. v. Del Monte Fresh Produce N.A., Inc.*,
    179 F.3d 1279 (11th Cir. 1999) ..............................................................................10

*Bonnet v. Harvest (U.S.) Holdings, Inc.*,
    741 F.3d 1155 (10th Cir. 2014) ...............................................................................12

*Duggan v. Martorello et al.*,
    No. 18-cv-12277-JDG (D. Mass.)..................................................................... *passim*

*Freilich v. Upper Chesapeake Health, Inc.*,
    313 F.3d 205 (4th Cir. 2002) ...................................................................................11

*Galloway et al. v. Big Picture Loans, LLC et al.*,
    No. 3:18-cv-406 (E.D. Va.) ........................................................................................4

*Galloway et al. v. Martorello et al.*,
    No. 3:19-cv-00314-REP (E.D. Va.)............................................................................4

*Galloway et al. v. Williams et al.*,
    No. 3:19-cv-00470-REP .....................................................................................5, 6, 9

*Estate of Gonzales v. Hickman*,
    No. ED CV 05-660 MMM, 2007 U.S. Dist. LEXIS 83702 (C.D. Cal. Apr. 13,
    2007) ......................................................................................................................9, 10

*Grand Canyon Skywalk Development, LLC v. Cieslak*,
    No. 2:15-cv-006630-JAD-GWF, 2015 WL 3551305 (D. Nev. June 5, 2015) ........12

*Great Lakes Transp. Holding, LLC v. Yellow Cab Serv. Corp. of Fla.*,
    2011 U.S. Dist. LEXIS 68910 (E.D. Mich. June 27, 2011)................................8, 14

*Hengle v. Treppa*,
    19 F.4th 324 (4th Cir. 2021) .....................................................................................12

*KinectUs LLC v. Bumble Trading LLC*,
    No. 21-mc-91665-ADB, 2021 U.S. Dist. LEXIS 243978 (D. Mass. Dec. 22,
    2021) .......................................................................................................................8, 14

*Lewis v. Clarke*,
    137 S. Ct. 1285 (2017)..................................................................................11, 12, 13

*In re Miscellaneous Subpoenas*,
    No. 3:16-MC-00003-MAM, 2016 WL 4154889 (D.S.D. Aug. 1, 2016) ................11

i

*Narragansett Indian Tribe v. Rhode Island*,
    449 F.3d 16 (1st Cir. 2006)......................................................................................9

*Powers v. Ohio*,
    499 U.S. 400 (1991).............................................................................................10

*Singleton v. Wulff*,
    428 U.S. 106 (1976).............................................................................................10

*Smith et al. v. Martorello et al.*,
    No. 3:18-cv-01651-AC (D. Or.) .............................................................................4

*Tamiami Partners, Ltd. v. Miccosukee Tribe of Indians of Fla.*,
    177 F.3d 1212 (11th Cir. 1999) ...........................................................................12

*United States v. James*,
    980 F.2d 1314 (9th Cir. 1992) ..........................................................................9, 10

*United States v. Menominee Tribal Enters.*,
    No. 07-C-316, 2008 U.S. Dist. LEXIS 64607 (E.D. Wis. May 30, 2008) .........9, 10

*Wichtman v. Martorello*,
    2019 U.S. Dist. LEXIS 8334 (W.D. Mich. Jan.17, 2019) ...............................7, 8, 10

*Williams et al. v. Big Picture Loans, LLC et al.*,
    No. 3:17-cv-461 (E.D. Va.) ..................................................................................4, 5

*Williams v. Big Picture Loans, LLC*,
    929 F.3d 170 (4th Cir. 2019) ....................................................................................5

**Statutes**

18 U.S.C. § 1962(c) ......................................................................................................3

**Other Authorities**

Fed. R. Civ. P. 26(b)(1)..............................................................................................7, 8

Fed. R. Civ. P. 45.......................................................................................................1, 7

Defendants, Matt Martorello and Eventide Credit Acquisitions, LLC ("**Defendants**"), respectfully submit this brief in opposition to the *Motion to Quash Subpoena Issued to Donna Kenney* (the "**Motion**") filed by nonp arty Donna Kenney ("**Kenney**") seeking to quash a subpoena pursuant to Federal Rule of Civil Procedure 45 for a deposition (the "**Subpoena**") issued by the United States District Court for the District of Massachusetts (the "**Issuing Court**") in *Duggan v. Martorello et al.*, No. 18-cv-12277-JDG (D. Mass.) (the "**Underlying Case**").

## I.       INTRODUCTION

Kenney seeks to quash the Subpoena on the grounds that: (1) she purportedly holds the same tribal sovereign immunity as her former employer, Big Picture Loans, LLC ("**Big Picture**") and its affiliate, Ascension Technologies, LLC ("**Ascension,**" and with Big Picture, the "**Tribal Entities**"), which are arms of the Lac Vieux Desert Band of Lake Superior Chippewa Indians ("**LVD**" or "**Tribe**"); and (2) responding to the subpoena would somehow unduly burden Kenney given her immunity and the "limited importance of her testimony," in her self-serving view.  Each of these assertions should be rejected.

*First,* as a threshold matter, Kenney does not have standing to invoke the sovereign immunity of the Tribal Entities.  And, even if she did, the Tribal Entities' sovereign immunity does not extend to a deposition sought from her as an individual fact witness, especially where Plaintiff's allegations suggest that Kenney acted beyond the scope of authority permitted by the Tribe. Moreover, since the Tribal Entities have provided and agreed to provide substantial information to the Plaintiff in the Underlying Case, the Tribal Entities have waived their sovereign immunity with respect to the information sought by Defendants.  Far from an "end run" around immunity (ECF 3, PageID.74), the Subpoena levels the playing field by permitting Defendants access to the same pool of witnesses and information that the Tribal Entities already provided or promised to provide to Plaintiff.

*Second*, Kenney has failed to meet *her burden* of demonstrating that complying with the Subpoena would be unduly burdensome.  Instead, Kenney incorrectly argues that Defendants have the burden to show that the relevant discovery sought would not be burdensome. Because Kenney confuses the applicable burden and fails to establish any burden, the Motion fails.

## II.  RELEVANT BACKGROUND

### A.      The Underlying Case

The claims in the Underlying Case stem from the tribal lending operations of the LVD, conducted through Big Picture with support services provided by Ascension. Through these lending operations, Big Picture makes small dollar short-term loans at high APRs from LVD's reservation to consumers in need of a short-term emergency financial solution, all pursuant exclusively to LVD's tribal regulatory laws and applicable federal laws.

Since 2011, LVD has operated its online lending businesses. In 2012, LVD began offering loans to consumers through an arm of the Tribe called Red Rock Tribal Lending, LLC ("**Red Rock**").  To assist in the growth of LVD's lending portfolios (beyond their original online title lending business) and to provide necessary services to those portfolios, Red Rock entered into a servicing agreement with Bellicose VI, Inc. ("**Bellicose**").  In 2012, Bellicose assigned its rights under its servicing contracts with Red Rock to its affiliate, SourcePoint VI, LLC ("**SourcePoint**"). The services Red Rock obtained from Bellicose and SourcePoint included, *inter alia*, compliance management assistance, marketing material development, lead development, and the development of risk modeling and data analytics.

In 2012, LVD sought to purchase SourcePoint unsuccessfully.  Then, beginning in 2013, LVD sought to move in-house several vendor services in an effort to reduce costs, ensure longevity, and to further enhance economic development opportunities for LVD and members of LVD. Towards that end, LVD again sought to acquire SourcePoint, along with its affiliates and

parent company, Bellicose Capital, LLC ("**Bellicose Capital**"). After more than three years of discussions, LVD eventually acquired Bellicose Capital, including SourcePoint, in 2016.

Defendant Martorello was the president of Bellicose and an owner of Bellicose Capital before it was sold to LVD. Defendant Eventide is a secured creditor of the Tribal Entities as a result of the seller-financed transaction for the Bellicose Capital acquisition.

**B.        Plaintiff's Allegations**

As the Motion readily admits (ECF 3, PageID.75), Plaintiff in the Underlying Case claims that Big Picture is regulated by state usury laws, and not the LVD's regulatory laws, even as it pertains to Big Picture's ongoing conduct of making loans on LVD's reservation.  Plaintiff claims that such conduct violates RICO, 18 U.S.C. § 1962(c), as well as certain other state laws, and that Defendants are somehow liable for Big Picture's conduct. *See* Underlying Case ECF 118 (Second Amended Class Action Complaint).

Plaintiff in the Underlying Case, however, goes much further, alleging that Eventide and Martorello control Big Picture. *See* Underlying Case ECF 264 (Plaintiffs' Memorandum of Law in Support of Motion for Class Certification) at 6-7.  She further alleges that Eventide "owns" Big Picture Loans.  *See id.* at 6 ("Martorello engineered superficial changes to the structure of the operation—characterizing his interest as a $300 million debt rather than equity").

Plaintiff also alleges that Big Picture is engaging in extensive conduct that would be in blatant violation of the Tribe's own laws and regulations by making loans *off-reservation* rather than on-reservation, through entities not "operated" by the Tribe, not "arms of the Tribe", and not operated "exclusively" for the Tribe's benefit, but instead for Martorello's benefit. *See id.* at 6-9. In contrast, the Tribe's council adopted the Tribe's Consumer Financial Services Regulatory Code (the "**Regulatory Code**") to authorize consumer lending entities that are (i) wholly owned by LVD,

(ii) operate from the Reservation, and (iii) operate exclusively to "improve LVD's] economic self-sufficiency". *See* Ex. A (Regulatory Code) at §§ 1.1(a), (d), (h), 1.3, 2.4, 5.1.

Accordingly, while the Motion assumes that the Tribal Entities are entitled to sovereign immunity, this is a primary question at issue in the Underlying Case that must be determined in the first instance by the Issuing Court.

## C.       Procedural Posture

The Motion concedes (ECF 3, PageID.75) that the Underlying Case is one of several copycat litigations that are pending in federal court in Oregon (the "**Oregon Case**")[1] as well as federal court in Virginia (the "**Virginia Cases**" and with the Underlying Case and Oregon Case, the "**Cases**").[2] Importantly, the Tribal Entities (or certain of their officers) were initially named as defendants in the Cases, including from inception of the first case, *Williams*, in 2017.  The Tribal Entities moved to dismiss *Williams* on the grounds that they were protected by tribal sovereign immunity as arms of the LVD.  However, during the time the Tribal Entities were parties, they produced thousands of pages of jurisdictional discovery and provided numerous depositions to the plaintiffs. In fact, the discovery the plaintiffs in the Virginia Cases obtained from the Tribal Entities was so extensive that Plaintiff in the Underlying Case has not sought *any* additional discovery from them here or from any other third party.  Defendants Martorello and Eventide, however, did not having standing in that dispute. As a result, they were not permitted to participate in many aspects of the discovery from the Tribal Entities while they were parties to the Cases, and Defendants are now simply seeking to obtain an equal amount of discoverable information needed

---

[1] The Oregon Case is captioned *Smith et al. v. Martorello et al.*, No. 3:18-cv-01651-AC (D. Or.).
[2] The Virginia Cases are captioned (1) *Williams et al. v. Big Picture Loans, LLC et al.*, No. 3:17-cv-461 (E.D. Va.) ("*Williams*"); (2) *Galloway et al. v. Big Picture Loans, LLC et al.*, No. 3:18-cv-406 (E.D. Va.) ("*Galloway I*"); and (3) *Galloway et al. v. Martorello et al.*, No. 3:19-cv-00314-REP (E.D. Va.) ("*Galloway II*").

for their defense (*i.e.*, to prove that Big Picture is not regulated by the states) through the Subpoena and others like it.

The Tribal Entities' motion to dismiss in *Williams* was denied by the court overseeing the Virginia Cases, but the Fourth Circuit reversed the decision in July 2019 and held that the Tribal Entities are entitled to tribal sovereign immunity as arms of the LVD.  *See Williams v. Big Picture Loans, LLC*, 929 F.3d 170, 175 (4th Cir. 2019). However, and notwithstanding the Fourth Circuit's decision directing dismissal of the Tribal Entities from *Williams*, the court overseeing the Virginia Cases did not immediately dismiss them and the remaining Cases in Virginia and elsewhere continued to proceed against them. Among other things, Plaintiffs in the Virginia Cases alleged that the Tribal Entities had made material misrepresentations that called into question the factual underpinnings of the Fourth Circuit's decision.

Ultimately, the plaintiffs in the Cases, including Plaintiff in the Underlying Case here, entered into the Class Action Settlement Agreement and Release (the "**Settlement Agreement**") with the Tribal Entities, settling all claims against them. Plaintiffs sought and obtained approval of the Settlement Agreement (over Martorello and Eventide's objection) in *Galloway et al. v. Williams et al.*, No. 3:19-cv-00470-REP ("*Galloway III*").  *See Galloway III* at ECF 18, 19, 42, 43, & 65.  After the Settlement Agreement was approved on a final basis, the Tribal Entities were dismissed from each of the Cases, including the Underlying Case.

Pursuant to the Settlement Agreement, the Tribal Entities agreed to provide Plaintiff with information necessary to continue to pursue her claims against Defendants. In particular, if a class action were certified, the Tribal Entities agreed to

> provide (or provide authorization for third parties to provide) data
> sufficient to identify class members, to determine the terms of class
> members' loans, to determine payments made by class members on
> their loans, to determine which loans have been charged off, to

> determine all outstanding amounts owed under the terms of the class
> members' loan agreements, and *any other data or information about*
> *class members and their loans which is reasonably requested by*
> *Class Counsel . . .*

*See Galloway III* at ECF 55-1 (Settlement Agreement) at ¶ 6.3 (emphasis added). Upon plaintiffs'

representation that "they may need additional data, documents and information to establish liability

or for other important purposes in the [Cases] other than class certification," the Tribal Entities

also agreed to "negotiate and attempt to resolve any disagreement in good faith" with "[a]ny

remaining disputes [being] resolved in accordance with" binding mediation by District Court

Judge David Novak. *See id.* at ¶¶ 6.4-6.5. Such a lopsided waiver of immunity is untenable.

**D.       Relevance of Testimony Sought from Kenney**

Unsurprisingly, given that all of the prior discovery from the Tribal Entities was sought

and obtained solely by the Plaintiffs, there are gaps in the information available to Defendants.

This is particularly troublesome since Plaintiff's Second Amended Complaint in the Underlying

Case: (1) raises factual issues concerning Big Picture, its management and operations from its

creation as the successor entity to Red Rock through 2016 (and beyond) (*see* Underlying Case

ECF 115 (SAC) at ¶¶ 3-5, 60-105)); and (2) alleges a purported "class" that would include all Big

Picture loans made on or after October 31, 2014. *See id.* at ¶ 145.  Thus, Kenney cannot claim that

she – the admitted former Office Manager of Big Picture and its predecessor Duck Creek Tribal

Financial, LLC until sometime in 2016 (ECF 3, PageID.73) – purportedly has no relevant

information concerning the management and operations of these companies during this critical

time period at issue in the Underlying Case.

The deposition sought from Kenney seeks to close major gaps in the currently-available

discovery, and Defendants believe that it will provide substantial support for Defendants' defenses.

For example, given Kenney's position as Big Picture's office manager as well as the office

6

manager for Big Picture's predecessor, Red Rock, Kenney can certainly testify as to Big Picture's

on-reservation conduct during the time she was employed and as to who was in charge of that

conduct.  Kenney can also testify regarding who approved and created procedures while she was

office manager.  Kenney can also testify regarding her knowledge of Martorello's and Eventide's

alleged role in the management of Big Picture and its employees as well as whether they take any

direction from Martorello as Plaintiff's allegations suggest.  Kenney can also testify regarding

Michelle Hazen's, the CEO of Big Picture, involvement in its operations to refute Plaintiff's

allegations that Hazen is not involved.  Kenney can provide her firsthand account of how loans

were originated while she was office manager, including the activities that occurred on-

reservation.  Kenney can also testify regarding her experience with Big Picture's compliance

board, including its members, how often it met, its activities.  In short, Kenney possesses extensive

relevant information in her individual capacity that would support Defendants' defenses in the

Underlying Case.

### III.    STANDARD OF REVIEW

The Motion is governed by Federal Rule of Civil Procedure 45. *See, e.g., Wichtman v.*

*Martorello,* 2019 U.S. Dist. LEXIS 8334, at *3-4 (W.D. Mich. Jan.17, 2019).  Rule 45 permits a

party to seek discovery from a non-party that is permissible under Rule 26(b)(1).  *Id.*  Under Rule

26(b)(1), the scope of discovery is "quite broad," and allows a party to obtain discovery "regarding

any nonprivileged matter that is relevant to any party's claim or defense" and proportional to the

needs of the case. *Id.*; *see also* Fed. R. Civ. P. 26(b)(1); *Great Lakes Transp. Holding, LLC v.*

*Yellow Cab Serv. Corp. of Fla.,* 2011 U.S. Dist. LEXIS 68910, at *3-4 (E.D. Mich. June 27, 2011).

While a court must quash a subpoena that places an undue burden on a party, "the

individual seeking to quash the subpoena bears the burden of proof," including the burden of

establishing any claimed undue burden.  *Wichtman,* 2019 U.S. Dist. LEXIS 8334 at *3 (denying

motion to quash); *Great Lakes Transp.,* 2011 U.S. Dist. LEXIS 68910 at *3 (same).  In seeking to

quash a subpoena based on undue burden, the party resisting the subpoena "cannot rely on a mere

assertion that compliance would be burdensome and onerous without showing the manner and

extent of the burden and the injurious consequences of insisting upon compliance." *Great Lakes*

*Transp.,* 2011 U.S. Dist. LEXIS 68910 at *3-4 (quoting 9A Wright & Miller, Federal Practice and

Procedure § 2463.1, p. 507); *KinectUs LLC v. Bumble Trading LLC*, No. 21-mc-91665-ADB, 2021

U.S. Dist. LEXIS 243978, at *5 (D. Mass. Dec. 22, 2021).

## IV.    ARGUMENT

### A.    The Tribal Entities' sovereign immunity is not a basis to quash the Subpoena.

#### 1.    The Tribe Entities waived their sovereign immunity with respect to the testimony sought.

The Tribal Entities waived their sovereign immunity with respect to the information sought

by Defendants by agreeing to provide information to Plaintiff.  "An Indian tribe's sovereign

immunity may be limited by either tribal conduct (i.e., waiver or consent) or congressional

enactment (i.e., abrogation)." *Narragansett Indian Tribe v. Rhode Island*, 449 F.3d 16, 25 (1st Cir.

2006) (citing *Kiowa Tribe v. Mfg. Techs., Inc.*, 523 U.S. 751, 754 (1998); *Ninigret Dev. Corp. v.*

*Narragansett Indian Wetuomuck Hous. Auth.*, 207 F.3d 21, 29 (1st Cir. 2000)). "While such

actions must be clear and unequivocal in their import, there is no requirement that talismanic

phrases be employed. Thus, an effective limitation on tribal sovereign immunity need not use

magic words. *See id.* (citing C*&L Enters. v. Citizen Band Potawatomi Indian Tribe*, 532 U.S. 411,

418 & 420-21 (2001)).

"[A] non-party sovereign that voluntarily makes documents available to one party to an

action waives its claim to immunity from a subpoena by the opposing party that seeks the same

(or different but related) documents." *Estate of Gonzales v. Hickman*, No. ED CV 05-660 MMM

(RCx), 2007 U.S. Dist. LEXIS 83702, at *22 (C.D. Cal. Apr. 13, 2007) (citing *United States v. James*, 980 F.2d 1314, 1320 (9th Cir. 1992)).  For example, in *United States v. James*, a tribe voluntarily provided documents from one of its agencies to one party. *See* 980 F.2d at 1320. As a result, the Ninth Circuit held that it had expressly waived its immunity as to all relevant documents in the possession of that agency because it could not "selectively provide documents and then hide behind a claim of sovereign immunity when the defense requests different documents from the same agency." *Id; see also United States v. Menominee Tribal Enters.*, No. 07-C-316, 2008 U.S. Dist. LEXIS 64607, at *35-36 (E.D. Wis. May 30, 2008) (declining to quash subpoena on the ground of tribal immunity where tribe provided information to government because "it would be unfair to deprive the defense information of the same kind that the Tribe, or its officials, voluntarily provided" the government).

Here, the Tribal Entities agreed to provide extensive information to Plaintiff to support her efforts to obtain class certification. *See Galloway III* at ECF 55-1 (Settlement Agreement) at ¶ 6.3. The Tribal Entities also agreed to negotiate and confer with Plaintiff in good faith regarding any other information Plaintiff might seek from the Tribal Entities necessary to establish Defendants' liability and to submit any disagreements to binding mediation by a sitting federal judge in Virginia. *See id.* at ¶¶ 6.4-6.5.  This is unequivocally a waiver of sovereign immunity, albeit an unfairly lopsided one. This in addition to the nearly unfettered jurisdictional discovery the Tribal Entities afforded only to Plaintiffs that Plaintiff has determined is even sufficient to support her claims substantively. Such one-sided waiver of sovereign immunity for the benefit of one party, but not the other, is extremely prejudicial and precisely the reason that courts hold sovereign immunity is deemed waived as to both sides. *See Estate of Gonzales*, 2007 U.S. Dist. LEXIS 83702, at *22; *James*, 980 F.2d at 1320; *Menominee Tribal Enters.*, 2008 U.S. Dist. LEXIS 64607,

at \*35-36.  The Court should find a similar waiver here and deny the Motion.  A finding of wavier is even more appropriate given that plaintiffs have, apparently, directed the Tribal Entities and their affiliates not to cooperate in discovery sought by Defendants.  *See* Ex. B (email).

> ## 2.      Kenney lacks standing to invoke the Tribe's sovereign immunity.

Kenney does not have standing to invoke the Tribe's sovereign immunity. *See Wichtman,* 2019 U.S. Dist. LEXIS 8334 at \*3 (noting that subpoenaed non-party could not assert tribal sovereign immunity because "Wichtman is not a party to the underlying lawsuit, but is being subpoenaed as a witness").  In general, a litigant must "assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties." *Powers v. Ohio*, 499 U.S. 400, 410 (1991). In particular, "[p]arties other than a foreign sovereign ordinarily lack standing to raise the defense of sovereign immunity." *Aquamar, S.A. v. Del Monte Fresh Produce N.A., Inc.*, 179 F.3d 1279, 1290 (11th Cir. 1999); *see also Singleton v. Wulff*, 428 U.S. 106, 114 (1976) ("[t]hird parties themselves usually will be the best proponents of their own rights"). Therefore, "[t]o overcome the prudential limitation on third-party standing, a plaintiff must demonstrate: (1) an injury-in-fact; (2) a close relationship between herself and the person whose right she seeks to assert; and (3) a hindrance to the third party's ability to protect his or her own interests." *Freilich v. Upper Chesapeake Health, Inc.*, 313 F.3d 205, 215 (4th Cir. 2002) (citing *Powers*, 499 U.S. at 410–11).

Here, even assuming Kenney can meet the first two elements, Kenney has not suggested that the Tribal Entities are in any way hindered from protecting their own interests. In particular, she fails to allege any obstacles at all to the Tribe or Tribal Entities asserting their own interests and opposing the subpoenas themselves. Thus, to the extent Kenney's Motion depends upon the rights of the Tribe or Tribal Entities (which has not opposed the Subpoena itself) rather than herself, she lacks standing to invoke these defenses.

10

**3.    The Subpoena is directed to Kenney in her individual capacity and not in an official capacity for the Tribe.**

Kenney herself, not the Tribe or the Tribal Entities, is being subpoenaed as a witness. Importantly, "immunity from process does not apply to individual tribal members"—much less non-tribal members.  *See In re Miscellaneous Subpoenas*, No. 3:16-MC-00003-MAM, 2016 WL 4154889, at *3 (D.S.D. Aug. 1, 2016) (citing, *inter alia*, *Puyallup Tribe, Inc. v. Dep't of Game of State of Wash.*, 433 U.S. 165, 173 (1977)).  Rather, a tribe's immunity extends to an individual, if at all, to the extent the individual is sued in her official capacity as an officer of the sovereign entity—in other words, when the suit is in fact against the Tribe, not the individual. "In an official-capacity claim, the relief sought is only nominally against the official and in fact is against the official's office and thus the sovereign itself. . . . The real party in interest is the government entity, not the named official." *Lewis v. Clarke*, 137 S. Ct. 1285, 1291 (2017). By contrast, "'[o]fficers sued in their personal capacity come to court as individuals,' and the real party in interest is the individual, not the sovereign." *Id.* (quoting *Hafer v. Melo*, 502 U.S. 21, 27 (1991)). "The distinction between individual- and official-capacity suits is paramount here" (*id.*), because "in a suit brought against a tribal employee in his individual capacity, the employee, not the tribe, is the real party in interest *and the tribe's sovereign immunity is not implicated.*" *Id.* at 1288 (emphasis added).  *See also Tamiami Partners, Ltd. v. Miccosukee Tribe of Indians of Fla.*, 177 F.3d 1212, 1225 (11th Cir. 1999) ("[T]ribal officers are protected by tribal sovereign immunity when they act in their official capacity and within the scope of their authority; however, they are subject to suit under the doctrine of *Ex parte Young* when they act beyond their authority."); *Hengle v. Treppa*, 19 F.4th 324, 346 (4th Cir. 2021) (holding that the Supreme Court has blessed *Ex Parte Young* by analogy suits against tribal officials for violations of state law).

11

Several courts have held that while subpoenas are "suits" against the tribe, triggering sovereign immunity, that reasoning does not necessarily trigger sovereign immunity when a subpoena is served upon tribal officers (even to the extent that Kenney, as an Office Manager, could be considered a tribal officer). *See, e.g.*, *Bonnet v. Harvest (U.S.) Holdings, Inc.*, 741 F.3d 1155, 1162 (10th Cir. 2014) (stating in dicta that it could "see no reason why an Indian tribe should be able to 'shut off an appropriate judicial demand for discovery' served on a tribal official, rather than against the Tribe itself"); *Grand Canyon Skywalk Development, LLC v. Cieslak*, No. 2:15-cv-006630-JAD-GWF, 2015 WL 3551305 (D. Nev. June 5, 2015) (determining that, even if a tribe's law firm "might otherwise be immune from a suit for damages based on tribal sovereign immunity, the doctrine does not protect or excuse it from compliance with the subpoena" regarding communications with third parties on behalf of the tribe).

A key distinction between individual-capacity and official-capacity claims is revealing here. Because official-capacity claims are brought against the entity, rather than the named officer, "when officials sued in their official capacities leave office, their successors automatically assume their role in the litigation" because "[t]he real party in interest is the government entity, not the named official." *Lewis*, 137 S. Ct. at 1291. But here, there would be no point in issuing the Subpoena to Kenney's office manager replacement. The whole intent of the Subpoena is to discover interactions and communications with the parties involved in the conduct underlying the Underlying Case, of which Kenney has personal knowledge. Kenney is not merely the nominal subject of the Subpoena; it is directed to her personally, and is intended to obtain discovery of facts and information uniquely within her possession. Her involvement, not her office, makes her a person of interest here.

Moreover, the allegations made by Plaintiff in the Underlying Case suggest that Kenney's conduct was beyond the scope of her authority under the Tribe's Regulatory Code, and thus she would not have immunity in her individual capacity. *See supra* II.A.  The Subpoena seeks Kenney's testimony only in her personal capacity as someone with relevant knowledge given that she is the former Office Manager of Big Picture and former Office Manager of the company that managed Red Rock. Defendants intend to obtain discovery regarding facts within Kenney's personal knowledge, having personally managed Big Picture's offices for many years.

Thus, this is not a suit against Kenney in any official capacity as a tribal officer, and she cannot invoke the Tribe's sovereign immunity.

**B.     Kenney Has Not Carried Her Burden of Showing the Subpoenas Are Unduly Burdensome**

Kenney argues that the Subpoena is unduly burdensome.  *See* ECF 3, PageID.83.  Notably, Kenney does not allege that she does not possess relevant information, but instead relies on the bare and unsupported argument that "Defendants have not articulated" why Kenney's testimony is relevant to the claims of defenses in the Underlying Case.  However, Kenney bears the burden of establishing that compliance with the Subpoena would result in an undue burden, and she has not done so here. *See Great Lakes Transp.,* 2011 U.S. Dist. LEXIS 68910 at *3-4 (denying motion to quash where "[t]he movants have failed to provide the Court with facts or evidence to support their arguments that the subpoenas must be quashed"); *KinectUs LLC*, 2021 U.S. Dist. LEXIS 243978, at *5 ("the party resisting subpoena bears the burden of showing that the subpoena imposes an undue burden").  As to the relevance of her testimony to the Underlying Case, Kenney establishes that connection herself – by admitting that she was the Office Manager for Big Picture (and for its predecessor which operated Red Rock) during a substantial portion of the time period at issue in the Underlying Case.

Because Kenny does not address the extent to which she will be individually burdened by complying with the Subpoena, the Motion should be denied.

## V.    CONCLUSION

Kenney's Motion should be denied. Defendants respectfully request in the alternative that the Court transfer this action to the District of Massachusetts for the reasons set forth in Defendants' concurrently filed Motion to Transfer.

Dated: December 30, 2022

<div style="margin-left:40%;">

   /s/ Amanda Rauh-Bieri
D. Andrew Portinga (P55804)
Amanda Rauh-Bieri (P83615
MILLER JOHNSON
Attorneys for Defendants
45 Ottawa Avenue SW, Suite 1100
Grand Rapids, MI  49503
(616) 831-1700
portingaa@millerjohnson.com
rauhbieria@millerjohnson.com

*and*

Bernard R. Given II (*Application for Admission forthcoming*)
LOEB & LOEB LLP
10100 Santa Monica Blvd., Suite 2200
Los Angeles, CA 90067
Telephone: (310) 282-2348
Facsimile: (310) 742-0414
bgiven@loeb.com

*Attorneys for Defendants*

</div>

23312923.2

MJ_DMS 35869757v6

14